

B. McKay Mignault, Chief Bankruptcy Judge
United States Bankruptcy Court

# IN THE UNITED STATED BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| THREESQUARE, LLC, ) | Case No. 3:19-bk-00975 |
| ) | |
| Debtor. ) | Chapter 11 |
| ) | |

### MEMORANDUM OPINION

Before the court is consideration of the proposed Chapter 11 reorganization sought by ThreeSquare, LLC. The Office of the United States Trustee ("UST") is the only interested party to object to the Debtor's proposed Chapter 11 plan. Additionally, the UST seeks conversion of this case to one under Chapter 7. On August 16, 2022, the court held an evidentiary hearing to resolve the extant dispute. At the conclusion of the hearing, the court ordered the parties to submit post-hearing briefing, which the parties timely filed.

For the reasons stated herein, the court will enter a separate order overruling the UST's objection to the Debtor's proposed plan and denying the UST's motion to convert. The court will subsequently accept a confirmation order from the Debtor.

### I. BACKGROUND

The Debtor generates income from two sources. First, it owns commercial real estate located at 123 E. German St., Shepherdstown, West Virginia. The Debtor leases the property to The Good Shop for $3,400 monthly. The Debtor and The Good Shop are in the second year of a three-year lease, which calls for an increase in rent upon the renewal of the lease after the third year (June 1, 2024). That increase is set as the current rent multiplied by the Consumer Price Index or three percent. Notably, The Good Shop has leased the Debtor's property for the past eight years.

Additionally, the Debtor manages rental property owned by David and Monica Levine, its principals. According to its management agreement with the Levines, the Debtor's management fee is twenty percent of all rental income or $400, whichever is greater. According to the Debtor, it is guaranteed at least $800 per month but has potential for more. As noted by the UST, however, the Debtor's management agreement has only sporadically, if ever, generated more than $800 monthly.

Together with the rental income and management income, the Debtor proposed to fund its plan with an initial capital contribution of $7,500 from the Levines and an additional $9,550 the Levines will pay the Debtor for costs associated with storage and a plumbing emergency. According to the Debtor, the capital contribution and cash on hand will give it the financial wherewithal to complete its thirty-six-month plan. Notably, the Debtor's plan also calls for a balloon payment to its secured creditor following the completion of the plan, although the Debtor testified that it is hopeful to refinance any remaining portion of that claim after completing payments under the plan, which contemplates a six-percent dividend to general unsecured creditors.

## II. DISCUSSION

The Debtor asserts its proposed plan is confirmable because it possesses adequate cash flow, together with cash on hand and an anticipated capital contribution, to fund the plan payments totaling $155, 576.05. Additionally, the Debtor contends that its principals are committed to its reorganization and will provide additional capital as is necessary to successfully complete the plan. Indeed, the Debtor's plan provides that the Levines, personally, rather than the Debtor, will pay attorney fees due and owing to Debtor's counsel.

The UST contests the feasibility of the Debtor's plan. Specifically, it argues that the Debtor does not have sufficient cash flow to meet its monthly obligations under the proposed plan. It also asserts that the Debtor cannot reasonably rely on the Levines for capital contributions because they themselves are engaged in a Chapter 7 bankruptcy.[1] Additionally, the UST contends that the Debtor's plan is contingent on its ability to refinance the debt secured by its commercial rental property such that the Debtor's prospects are too speculative. Finally, the UST asserts that the

---

[1] To be clear, the Levines obtained a Chapter 7 discharge on December 21, 2020, although the case remains open for the administration of assets.

court cannot confirm the Debtor's plan with the extant exculpation provisions. In support of its position in that regard, the UST cites the court to *Berhmann v. Nat'l Heritage Found.*, 663 F.3d 704 (4th Cir. 2011). Rather than confirm the Debtor's plan, the UST asserts that the court should convert the Debtor's case to one under Chapter 7.

Section 1129(a) of the Bankruptcy Code sets forth the requirements for confirmation of a plan under Chapter 11. As is relevant here, the court shall confirm a proposed plan only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor . . . unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). Section 1129(a)(11) is commonly known as the "feasibility" requirement. The court's consideration in that regard "is whether the plan offers a reasonable assurance of success. Success need not be guaranteed." *In re Tree of Life Church*, 522 B.R. 849, 864 (Bankr. D. S.C. 2015) (quoting *Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F. 2d 636, 649 (2nd Cir. 1988)).

> In analyzing feasibility, certain factors courts have considered include: the adequacy of the capital structure; the earning power of the business; economic conditions; the ability of management; the probability of the continuation of the same management; and any other related matter which determines the prospects of a sufficiently successful operation to enable performance of the provisions of the plan.

*Id*. at 865 (internal quotation omitted).

The Fourth Circuit in *Berhmann* instructed that "approval of nondebtor releases . . . should be granted cautiously and infrequently." *Berhmann*, 663 F.3d at 712. In determining whether to approve nondebtor releases as part of a proposed plan of reorganization, the Fourth Circuit cited approvingly the following seven factors from *Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 280 F.3d 648, 658 (6th Cir. 2002):

> (1) There is an identity of interests between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate; (2) The non-debtor has contributed substantial assets to the reorganization; (3) The injunction is essential to reorganization, namely, the reorganization hinges on the debtor being free from indirect suits against parties who would have indemnity or contribution claims against the debtor; (4) The impacted class, or classes, has overwhelmingly voted to accept the plan; (5) The plan provides a mechanism to pay for all, or substantially all, of the class or classes affected by the injunction; (6) The plan provides an opportunity for those claimants who choose not to settle to recover in

full and; (7) The bankruptcy court made a record of specific factual findings that support its conclusions.

*Berhmann*, 663 F.3d at 711-12.

Notably, however, the court's analysis in that regard was focused on third-party releases and not exculpation provisions. "On remand from the Fourth Circuit, the U.S. Bankruptcy Court for the Eastern District of Virginia addressed the propriety of the exculpation provision in *Berhmann*." *In re Neogenix Oncology, Inc.*, 508 B.R. 345, 361 (Bankr. D. Md. 2014) (citing *In re Nat'l Heritage Found., Inc.,* 478 B.R. 216, 232–34 (Bankr. E.D. Va. 2012), *aff'd sub nom National Heritage Foundation Inc. v. Berhmann,* No. 12–cv–1329, 2013 WL 1390822 (E.D. Va.2013)). "The court reviewed a number of decisions that uphold exculpation provisions and recognized that 'generally [exculpation provisions] are permissible, so long as they are properly limited and not overly broad.'" *Id.* (quoting *In re Nat'l Heritage Found., Inc.,* 478 B.R. at 233).

Here, the court finds the Debtor's plan to be feasible, and it will confirm the Debtor's proposed plan over the UST's objection. Regarding feasibility, the court finds the factors set forth above weigh in favor of confirming the Debtor's plan. Specifically, the court finds that the Debtor is adequately capitalized and has sufficient earning potential to perform during its thirty-six-month plan. To that end, the evidentiary record reflects that the Debtor possessed over $13,000 cash on hand as of the confirmation hearing, and the Levines proposed to ultimately inject $7,500 into the Debtor, leaving it with a relatively comfortable cash cushion as of the effective date of its plan.[2] Additionally, the court is confident that the Debtor will earn at least $4,200 monthly for thirty-six months, totaling $151,200.

Additionally, the court believes that the remaining factors are at least neutral or net-positive such that the court can confirm the Debtor's proposed plan. Specifically, the Levines are committed to the success of the Debtor's reorganization. Despite them and several related entities filing their own bankruptcies, the court believes the Levines have the wherewithal, financially and otherwise, to successfully manage the Debtor and contribute to the reorganization as is necessary for the Debtor's success. Notably, the Debtor's plan does not include the payment of attorney fees. Despite the UST's argument to the contrary, there is nothing to suggest the Levines will be

---

[2] Based upon the UST's argument, the court excludes the $9,550 the Levines also intend to pay to the Debtor for storage and a plumbing emergency. Nonetheless, the court believes there is sufficient cash in the case to offer a reasonable prospect of success.

unable to pay those fees. After all, Debtor's counsel may agree to whatever treatment it finds acceptable, and the court presumes the parties reached such an agreement based upon the terms of the plan. Thus, the issue is beyond the court's consideration as it relates to feasibility.

The largest unknown is whether the Debtor will be able to make the anticipated balloon payment, or refinance its secured debt, at the expiration of the plan. That, however, is beyond the thirty-six months of the proposed plan and is too remote in time for the court to discern whether the Debtor will succeed in that regard. As speculative as it may be to the UST, the court finds it just as likely that a refinance is achievable given the dozens of monthly payments the Debtor will make between now and then. Overall, the court thus finds that the Debtor has a reasonable prospect of success. As set forth above, guaranteed success is not required.

Regarding exculpation, the court finds the provisions at issue here to be customary and appropriate under the circumstances. The court believes the provisions are narrowly tailored and are consistent with what courts typically permit. Moreover, the UST did not present any evidence to substantiate its assertion that "Article VIII will essentially give David and Monica Levine a license to make decisions which could negatively impact the debtor . . . ." The court believes the UST's attack on the Levine's character is unwarranted based upon the record before the court in this case. To the contrary, the evidence before the court leads to the court to conclude that the Levines are committed to the Debtor's reorganization. The court thus finds it appropriate to confirm the Debtor's proposed plan with the extant exculpation provisions. *See In re Neogenix Oncology, Inc.*, 508 B.R. at 362 (recounting the benefit stakeholders, including debtor's counsel and its officers, provided to the reorganization).

### III. CONCLUSION

Based upon the foregoing, the court will enter a separate order overruling the UST's objection to the Debtor's proposed Chapter 11 plan and denying the UST's motion to convert the case to one under Chapter 7. As feasibility and the exculpation provisions were the only disputes regarding the plan, the court finds that the Debtor's proposed plan otherwise meets the requirements of § 1129(a) and (b) of the Bankruptcy Code. The court will subsequently accept from the Debtor a confirmation order consistent herewith.